Richard S. KAYE and John Ward, Plaintiffs,

v.

FAST FOOD OPERATORS, INC., Aaron R. Fodiman, Hyman Schifrin, Alan W. Altman and Stanley Ratner, Defendants.

No. 82 Civ. 4296.

United States District Court, S.D. New York.

Sept. 16, 1983.

Ira Finkelstein, of Tenzer, Greenblatt, Fallon & Kaplan, New York City, for plaintiffs.

Mark E. Davidson, of Shea & Gould, New York City, for defendants Fast Food Operators, Inc. and Hyman Schifrin and Stanley Ratner.

Hyman Frankel, of Moskowitz, Altman & Frankel, New York City, for defendant Alan W. Altman.

Aaron Fodiman, pro se.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

The annexed Report and Recommendation of the Honorable Naomi Reice Buchwald, United States Magistrate, is hereby adopted as the Opinion of this Court. No objections were filed within the time permitted.

Settle a final Judgment on three (3) days notice or waiver of notice.

So Ordered.

## REPORT AND RECOMMENDATION

September 1, 1983

NAOMI REICE BUCHWALD, United States Magistrate.

By Order, dated May 12, 1983, you referred the above-captioned matter to me to hear and report as to whether the Court should approve the proposed settlement of this class action securities fraud litigation. For the reasons set forth below, we recommend approval of the settlement.

This litigation arises out of the public offering of 2.2 million units of common stock and warrants of defendant Fast Food Operators, Inc. (the "Company"), sold at $1

per unit, for which an allegedly false and misleading Registration Statement—Prospectus was issued on April 9, 1981. The Prospectus is alleged to have been materially false in that it failed to disclose that the President of the Company, defendant Aaron R. Fodiman, upon whom, according to the Prospectus, "[t]he success of the Company's business is largely dependent," had been convicted, upon a guilty plea, to three counts of aiding, abetting and inducing another to bribe a bank officer to obtain a loan in violation of 18 U.S.C. §§ 2, 215 (1976).

The plaintiff class consists of all purchasers of the Company's stock from April 9, 1981 until June 23, 1982, including those investors who sold their stock, represented by plaintiff, John Ward, as well as those who have retained their stock, represented by plaintiff, Richard S. Kaye. Since the public offering, the price of the Company's stock has, despite some fluctuation, generally increased, thus giving rise to limited injury to the plaintiff class.

The plaintiffs' Second Amended Complaint asserts claims against the Company, Fodiman, and the Company's other officers and directors, pursuant to section 11 of the Securities Act of 1933, 15 U.S.C. § 77k (1976), and section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976) and rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5 (1982) and seeks rescission for those investors who re-

tained their stock and damages for those who sold their stock at a loss.

The settlement proposal provides for a cash payment to the class of $40,000 to be paid to class members who file proofs of claim showing a sale of the stock at a loss, after a maximum deduction of $3,500 for attorneys' fees. Those investors will obtain a recovery of approximately 35.8 cents for each dollar of loss. In addition, the settlement provides that the Company shall institute certain procedures concerning the procurement of bank loans, government filings and public disclosures.[1] Finally, the settlement agreement provides for attorneys' fees in the sum of $17,000, composed of $3,500 out of the $40,000 settlement fund and $13,500 to be paid for by the Company in consideration for the non-monetary benefits of the settlement. None of the class members have objected to the settlement proposal and the time provided for objections has expired. Two investors, however, holding a few thousand shares of the Company's stock, have opted out of the class.

For the sake of completeness, we shall set forth the brief history of this litigation. The original complaint in this action was filed on June 30, 1982 by Richard S. Kaye as the sole class representative, asserting claims under section 11 and section 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(2) (1976). In September 1982, counsel stipulated to dismissal of the plaintiffs' section 12(2) claim "with prejudice" and plaintiffs then served an amended com-

---

1. 2(b)(ii) The Company agrees to implement the following procedures, which shall be maintained in effect at least 2 years from the date of final approval of this settlement, as defined in paragraph "3" of this Stipulation, and thereafter for such periods as the Company's board of directors (the "board"), in its sole discretion, shall determine is advisable and in the best interests of the Company: 1. All corporate borrowings, except for amounts less than $10,000 borrowed in ordinary course of business, will be subject to prior board approval. 2. If the Company is required to make any filing with any government agency or is required to submit any written statement to a lending institution or creditor which includes information concerning Fodiman, then Fodiman shall provide all of the information re-

quested concerning himself, to the board before the Company makes such filing or submits such statement as aforesaid. 3. All public disclosure statements filed with a federal or state securities agency, any securities exchange or the National Association of Securities Dealers, or disseminated to the public, shall be subject to prior approval by the board and corporate counsel. 4. All press releases and reports or other written communications to the Company's shareholders as a class issued by the Company shall be first approved by corporate counsel and one member of the board other than Fodiman. *See* Stipulation of Settlement, ¶ 2(b)(ii), attached as Exhibit A to affidavit of Ira A. Finkelstein, sworn to May 16, 1983.

plaint asserting claims under rule 10b–5 as well as section 11. On October 12, 1982, plaintiff moved for class certification and on November 17, 1982, defendants moved for summary judgment dismissing the action on the ground that the representative plaintiff, Richard S. Kaye, suffered no damages and, alternatively, that any losses suffered by plaintiff were not caused by defendants' acts. On March 9, 1983, the Court, upon the consent of counsel, issued an order which provided, *inter alia,* that John Ward, a seller of the Company's stock at a loss, be permitted to intervene as a plaintiff, and that, the action shall be maintained as a class action with both John Ward and Richard S. Kaye as class representatives.

## DISCUSSION

■ The role of the court in passing upon the propriety of a class action settlement is to "reach 'an intelligent and objective opinion of the probabilities of ultimate success should the claim be fully litigated' and from an educated estimate of the complexity, expense and likely duration of such litigation ... and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972) (citations omitted). The court must compare the probabilities of success upon a trial with the terms of the compromise. *Steinberg v. Carey,* 470 F.Supp. 471, 474 (S.D.N.Y.1979) (Weinfeld, J.) (footnote omitted). The most significant factor to consider is the strength of the plaintiffs' case balanced against the settlement offer. *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1981); *In Re Traffic Executive Association—Eastern Railroads,* 627 F.2d 631, 633

(2d Cir.1980). *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 463 (2d Cir. 1974).[2]

■ Mindful of the fact that we have neither the "right [n]or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute," *City of Detroit v. Grinnell Corp., supra,* at 456, we now turn to the strengths and weaknesses of the plaintiffs' case.

■ In essence, this is a strong case on the issue of liability and a problematic case on the issue of damages. There appears to be little dispute over whether the Prospectus was materially misleading and at least defendant Fodiman could be charged with knowledge of the falsity of the Prospectus. Nevertheless, plaintiffs may have difficulty proving that they were damaged.

First, plaintiffs' section 11 claim is subject to a statutory causation defense. 15 U.S.C. § 77k(e) (1976). Plaintiffs' damages would be reduced to the extent that defendants can prove that the plaintiffs' losses were not attributable to the misrepresentations in the Prospectus, but resulted, for example, from general market decline. *Feit v. Leasco Data Processing Corp.,* 332 F.Supp. 544, 566 (E.D.N.Y.1971). *See also Greenapple v. Detroit Edison Company,* 618 F.2d 198, 203 n. 7 (2d Cir.1980).

Plaintiffs' prospects for recovering damages under 10b–5, however, appear to be brighter. Plaintiffs' counsel points to several potential obstacles to recovery under 10b–5, none of which we find very persuasive. First, counsel argues that it will be difficult to prove scienter with respect to the Company and the individual defendants other than Fodiman. No showing has been

---

**2.** Under *Grinnell,* 495 F.2d at 463, these other factors are to be considered as well:

(1) the complexity, expense and likely duration of the litigation,

(2) the reaction of the class to the settlement,

(3) the stage of the proceedings and the amount of discovery completed,

(4) the risks of establishing liability,

(5) the risks of establishing damages,

(6) the risks of maintaining the class action through trial,

(7) the ability of the defendants to withstand a greater judgment,

(8) the range of reasonableness of the settlement fund in light of the best possible recovery,

(9) the range of reasonableness of the settlement to a possible recovery in light of all the attendant risks of litigation.

made, however, that Fodiman could not withstand a judgment for the entire amount of loss to the class by himself. In this connection, we note that according to the Second Amended Complaint, ¶ 14, Fodiman owns 15.4% of the Company's common stock.

Counsel also argues that there are two obstacles to the plaintiffs' claim for rescission. First, relying upon *Competitive Associates, Inc. v. International Health Sciences, Inc.,* [1974–1975 Transfer Binder] CCH Fed. Sec.L.Rep. ¶ 94,966 (S.D.N.Y.1975) (Brieant, J.) (section 12 claim) and *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 651 F.2d 615, 620 (9th Cir.1981), counsel argues that plaintiffs may have been under a duty to mitigate their damages by selling their stock within a reasonable time after ascertaining the fraud. *See also Marbury Management, Inc. v. Kohn,* 470 F.Supp. 509, 516 (S.D.N.Y.1979), *aff'd in part, rev'd in part,* 629 F.2d 705 (2d Cir.1980). To the extent that such a duty may exist in a 10b–5 case, it appears that the duty to mitigate would not be applicable here for shortly after public disclosure of the omissions, the stock began a steady climb in price thus benefitting those who held on to the stock.

Secondly, counsel argues that rescission may not be available against these defendants because the public offering was made through an underwriter and therefore none of the plaintiffs were in privity with any of the defendants. Again, we are not persuaded that a lack of privity would preclude recovery against Fodiman. *Gordon v. Burr,* 506 F.2d 1080, 1083–85 (2d Cir.1974).

Finally, at oral argument, defense counsel argued that there may be a causation defense available in 10b–5 as well as section 11 cases. *See* Tr. at 21. While the Second Circuit has held that in a 10b–5 case, a defendant broker should not be held liable for mismanaging a stock portfolio to the full extent of the plaintiff's loss if such loss was attributable, in part, to a bear market, *Rolf v. Blyth Eastman Dillon & Co.,* 570 F.2d 38, 48–50 (2d Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1979), nevertheless later cases appear to have limited *Rolf* to its facts. *Clark v. John Lamula Investors, Inc.,* 583 F.2d 594, 603–4 (2d Cir.1978); *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 577–78 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). We find that the availability of the *Rolf* defense is a risk to the plaintiffs but not significant enough, by itself, to justify the settlement.

Putting aside plaintiffs' claim for rescission, plaintiffs' counsel offers no cogent reason why plaintiffs would have difficulty recovering damages even assuming the "lack of privity" defense were upheld. Instead, counsel simply states that the market price of the stock has maintained sustained increases. That is small solace, however, to the beneficiaries of this settlement: the investors who sold their stock at a loss.

■ Apart from the arguments of counsel, we have independently considered the question of the amount of damages plaintiffs could recover and have determined that there is sufficient uncertainty to support counsel's conclusion that there are significant risks to plaintiffs' chances for full recovery. First, it is unclear what measure of damages would be considered appropriate in this case. We have evaluated the settlement proposal with reference to the maximum amount plaintiffs could recover: the difference between purchase price of their stock and its resale price. It is far from clear, however, that that would be the proper measure of damages in this case. To recover that amount, the plaintiffs would have to prove that but for the omission in the Prospectus they would not have purchased the Company's stock at all. *Chasins v. Smith Barney & Co.,* 438 F.2d 1167, 1173 (2d Cir.1970) (a measure of damages consisting of the difference between the investor's purchase price and his resale price is justified where "the evil is not the price ... but the fact of being induced to buy" without disclosure). *See also Bonime v. Doyle,* 416 F.Supp. 1372, 1383–84 n. 4 (S.D.N.Y.1976), *aff'd,* 556 F.2d 554, 555 (2d Cir.1977).

As an alternative, plaintiffs might be able to recover "out-of-pocket" losses: the

difference between the price paid and the "true value" of the shares received. *Steinberg v. Carey,* 470 F.Supp. 471, 476 (S.D.N.Y.1979) (Weinfeld, J.). *Bonime v. Doyle, supra,* 416 F.Supp. at 1384. In this case, it is far from clear how the plaintiffs could prove what the "true value" of the stock was. Some courts have calculated the true value of stock by reference to the price of the stock within a reasonable time after public disclosure. *See, e.g., Sirota, supra,* 673 F.2d at 577. *Harris v. American Investment Co.,* 523 F.2d 220 (8th Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976). If such a standard were applied here the plaintiffs' recovery would be minimal as the price of the Company's stock declined only slightly after public disclosure of the Prospectus' omissions.

Thus, we find that if this action was fully litigated through judgment plaintiffs would run a substantial risk of not recovering the full amount of their loss. Therefore, we are satisfied that the settlement proposal provides each member of the plaintiff class who suffered an actual loss with a monetary recovery that is within the range of reasonableness considering the best possible recovery and considering all the attendant risks and expenses of litigation. *Grinnell, supra,* 495 F.2d at 463. Indeed, the total amount of damages recoverable in this case might not even justify the cost of litigating the case to judgment.

Finally, we have also considered the other factors relevant to a determination of the fairness, reasonableness and adequacy of the settlement and have concluded that all of these factors point towards approval of the settlement. While not dispositive, it is significant that no one has objected to the settlement. Furthermore, there is every indication that the settlement was reached after arms-length negotiations. Indeed, the parties agreed to the terms of the settlement while the plaintiffs' class certification motion and the defendants' summary judgment motion were pending. And although a settlement has been reached at a relatively early stage of the proceedings, before all of the parties' positions have crystallized, nevertheless the relatively low ceiling on damages in this case weighs in favor of an early settlement and the avoidance of further legal fees. *Cf. Plummer v. Chemical Bank,* 668 F.2d 654 (2d Cir.1982).

Having determined that the terms of the settlement provide a reasonable recovery for the members of the plaintiff class, we now turn to the only remaining issue, the question of attorneys' fees. The settlement agreement provides for a recovery of a total of $17,000 in attorneys' fees. Since the original submission did not include contemporaneous time records, I requested that counsel submit them, which was done. *See* Letter of Ira Finkelstein, dated July 14, 1983, and attached exhibits. Unfortunately, the time records submitted were not sufficiently detailed to provide a reasonable basis for review. In view of the prospective nature of the requirement of *New York State Association for Retarded Children v. Carey,* 711 F.2d 1136, 1154 (2d Cir.1983), to keep detailed time records, I requested plaintiffs' counsel to submit affidavits reconstructing their expenditure of time in connection with this action. *Id.,* at 1147. *See* Affidavit of Ira Finkelstein, Esq., sworn to August 4, 1983, and attached affidavits and exhibits.

Having independently reviewed the affidavits and the billing rates of the attorneys and paralegals involved, I have concluded that plaintiffs' counsel has reasonably expended in excess of $17,000 worth of attorneys' time in prosecution of this action. Finally, we note that the $17,000 attorneys' fees provision is also reasonable when compared with the value of the settlement and as a percentage of the total amount paid by the defendants to settle the case, *i.e.,* $53,500. *See generally Grinnell, supra,* 495 F.2d at 468–74.

Accordingly, we respectfully recommend that the settlement proposal be approved.

Copies of the foregoing Report and Recommendation have been mailed to all counsel, who are hereby instructed that any objections to the Report and Recommendation must in accordance with Fed.R.Civ.P. 72(b) be filed with your Honor within 10 days from this date, unless an extension of time is granted by you. The parties are

further directed to comply with Rule 7 of the Rules For Proceedings Before Magistrates of this Court.