[No. 70300-1.   En Banc.]
Argued May 17, 2001.     Decided November 29, 2001.

FRANCINE PICKETT, ET AL., *Respondents*, JOSEPH HESS, ET AL., *Intervenors*, v. HOLLAND AMERICA LINE-WESTOURS, INC., *Petitioner.*

SANDERS and CHAMBERS, JJ., dissent by separate opinion.

*Stephen M. Rummage* and *Jason C. Klein* (of *Davis Wright Tremaine*), for petitioner.

*Dan Drachler* (of *Zwerling, Schachter & Zwerling*) (*Robert Schachter* and *Joseph Lipofsky*, of counsel); and *Steve W. Berman, George W. Sampson*, and *Erin K. Flory* (of *Hagens Berman, L.L.P.*), for respondents.

*Leonard N. Bebchick*, pro se.

*Paul J. Lawrence* and *Todd L. Nunn* on behalf of Association of Washington Business, amicus curiae.

*Paul J. Lawrence* and *Karl J. Quackenbush* on behalf of Washington Software Alliance, amicus curiae.

MADSEN, J. — In 1996, Francine Pickett, Brian Cohen, and Jack and Belle Masin (Plaintiffs) filed suit against Holland America Line-Westours, Inc., (Holland) on behalf of all persons similarly situated (those persons purchasing cruises after April 19, 1992) to recover a portion of the "port charges and taxes" charged to them in addition to their cruise fares. Clerk's Papers (CP) at 2-14. The foundation for Plaintiffs' claim is that these charges exceeded the actual taxes and port charges paid by Holland to port authorities and governmental entities, that Holland used the markup for other corporate purposes, and that Holland misrepresented this fact in its advertising and contracts. Plaintiffs claimed this was a violation of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW, and raised additional claims of unjust enrichment and negligent misrepresentation. *Id*.

Pursuant to CR 23(b)(3) Plaintiffs moved for class certification of their CPA claims. Their motion was denied by the trial court. Plaintiffs sought interlocutory discretionary review by the Court of Appeals of this ruling. *See* RAP 2.3(b). The Court of Appeals Commissioner denied discretionary review, based on a determination that Plaintiffs failed to establish that the trial court "committed obvious or probable error." CP at 1234-41.

Thereafter, the parties reached a proposed settlement, the trial court conditionally certified a class for settlement purposes, and notice was sent to the class members, allowing them to "opt out" or appear at the hearing and object to the settlement. A lone objector, Leonard Bebchick (an attorney from the District of Columbia), intervened and sought court disapproval of the settlement. Notwithstanding Bebchick's objection, the trial court approved the settlement as being "fair, adequate, and reasonable" and entered an order to this effect. Bebchick appealed, with Holland and

the Plaintiffs standing in opposition, and the Court of Appeals reversed in a published decision. *Pickett v. Holland Am. Line-Westours, Inc.*, 101 Wn. App. 901, 922, 6 P.3d 63 (2000). We hold that the class settlement is "fair, adequate, and reasonable," and we reverse.

## FACTS

The named Plaintiffs in this case are Francine Pickett (from New York), Brian Cohen (also from New York), and Jack and Belle Masin (from Florida). On April 19, 1996, they filed suit against Holland, a Seattle based corporation, on behalf of all consumers who purchased cruises on Holland after April 19, 1992 (the preceding four years) and paid "port charges and taxes" in addition to their cruise fare.

Plaintiffs' complaint alleged violations of the Washington CPA, negligent misrepresentation, and unjust enrichment. The gravamen of Plaintiffs' claim is that Holland represented to them, through its advertising and cruise contracts, that "port charges and taxes" were mandatory fees levied by port authorities and government entities, when in fact a portion of these fees were knowingly collected by Holland for other purposes. The following provision of Holland's cruise contract is illustrative of Holland's representations:

> **"Additions to Fare/Port Charges/Taxes**: . . .
>
> (b) Similarly, the amount specified in the Holland America Line brochure for port charges and taxes was based upon the amount of governmental charges, taxes and fees in existence at the time of printing. If increases have occurred or should hereafter occur in those amounts, Owner and HALW reserve the right to require you to pay the additional amounts as a condition of taking the Cruise or Cruisetour. No right of cancellation exists under these circumstances."

*Pickett*, 101 Wn. App. at 917.

Plaintiffs never alleged they were "overcharged" and each named Plaintiff concedes that they paid "port charges and taxes" in the exact amount advertised in Holland's litera-

ture. CP at 845, 867-69, 885, 911. Instead, Plaintiffs alleged that Holland deceived them by representing that "port charges and taxes" were solely governmental fees, when in fact, a portion of these fees were used by Holland for other purposes. Plaintiffs sought recovery of the difference between the actual governmentally imposed port charges and taxes, and the amount collected by Holland.

The financial documents illustrating the amounts charged passengers for "port charges and taxes," and the corresponding amounts paid by Holland for actual governmentally imposed charges were filed with this Court under seal. These documents provide a rough approximation of the amount allegedly overcharged. For instance, for one specific seven-day cruise consumers were allegedly overcharged $26.48. Charges and expenses for other cruise destinations are similar in amount. The amounts are higher for longer cruises.

On July 24, 1996, Holland moved for partial summary judgment against all Plaintiffs other than Pickett, arguing that their actions were barred by a contractual limitations period. Holland's cruise contract provides that a lawsuit may not be maintained against Holland unless it is notified in writing of any potential claim within 30 days of the conclusion of the cruise, and the lawsuit is filed within 180 days after the cruise. The only named Plaintiff to comply with this provision was Pickett.

Judge Armstrong held that Washington's discovery rule was applicable to Plaintiffs' CPA claims, *see* RCW 4.16.080(4), and as such, the claims of Plaintiffs were tolled until they discovered the facts underlying their cause of action. Based on the limited amount of discovery conducted at that point in the proceedings the court was unable to make a determination on this issue, and accordingly, Holland's motion was denied.

Plaintiffs quickly moved for class certification pursuant to CR 23. Concerned about the expense of certifying a class with upward of a million members, the court deferred its ruling on this question to allow the parties time to conduct

discovery and submit briefing regarding the likelihood of Plaintiffs' success on the merits. Judge Armstrong recognized that the decision of whether to certify the class was not dependent on the merits of the action, but nevertheless wanted some analysis on the viability of Plaintiffs' claim before undertaking the expense of certifying such a large class.

The matter was then transferred to another trial judge, Judge White. After extensive briefing, the trial court heard Plaintiffs' class certification motion on September 22, 1997. Holland argued that class certification was improper under CR 23(b)(3), which requires, in part, a finding that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." CR 23(b)(3). The trial court agreed, citing three critical issues. First, the court found that the need to address choice of law questions for individual class members would make class certification inefficient. Second, the court found that there are a significant number of individualized inquiries that would have to be made with respect to Holland's contractual limitations period. And third, individual issues of proof related to causation and injury by each class member would cause "individual issues [to] predominate over common questions." CP at 66. Accordingly, Plaintiffs' motion was denied.

Plaintiffs sought interlocutory discretionary review of the trial court's ruling. On January 22, 1998, in an eight page decision, the Court of Appeals Commissioner denied review of the trial court's denial of class certification based on a determination that the trial court did not commit "obvious or probable error." CP at 1241.

Thereafter, the parties reached a settlement agreement and a class was conditionally certified for settlement purposes. Pursuant to the settlement agreement, members of the class were to receive fully transferable travel vouchers, redeemable for future Holland cruises. They are valid for

three years from the date of issuance. The voucher amounts vary, depending upon the length of the original cruise and the date of its departure. The amounts are as follows:

| Years of Departure | Duration of Cruise | Voucher Amount |
|---|---|---|
| 1992-94 | Under 14 Days | $10.00 |
| | 14-21 Days | $15.00 |
| | Over 21 Days | $20.00 |
| 1995-96 | Under 14 Days | $25.00 |
| | 14-21 Days | $37.50 |
| | Over 21 Days | $50.00 |

The principal restriction on use of the vouchers is that they must be used for a booking made within 45 days of departure.

On April 21, 1998, the trial court preliminarily approved the settlement and scheduled a hearing for September 28, 1998, to determine whether the settlement was "fair, adequate, and reasonable." The court also ordered that notice of the proposed settlement be given to all class members allowing them to object to the settlement or "opt out." Fewer than 50 objections were made out of a class of over 750,000. One of these objectors, Leonard Bebchick, appeared at the court's reasonableness hearing and is the respondent before this Court.

On October 2, 1998, after evaluating the settlement in open court, the trial court entered a final judgment and order of dismissal with prejudice, approving the class settlement. Specifically, the court found that the "[s]ettlement is, in all respects, fair, reasonable, and adequate to the Plaintiff settlement class, and within the authority of the parties and resulted from extensive arm's-length negotiations." CP at 289.

The Court of Appeals reversed in a published decision. *Pickett*, 101 Wn. App. 901. The court initially determined that the trial court's original order denying class certification was wrong. Specifically, the court held: (1) that Washington law applied to each of the class members' CPA

claims, so there were no individual choice of law questions; (2) a showing of individual reliance was not required under the CPA, and thus, there were no individual issues as to causation; and (3) that none of the class members' claims was time barred. After making these legal determinations the court disapproved the settlement, stating that its holding regarding class certification "clears the way for certification of the class action by the trial court on remand. This dramatically changes the facts and will undoubtedly change the analysis of each factor by both the court and the plaintiffs' class." *Id.* at 922. Holland petitioned this Court for its review. The Washington Software Alliance and the Association of Washington Business have filed amici briefs urging reversal. We hold that the class settlement is "fair, adequate, and reasonable." Accordingly, we reverse.

## ANALYSIS

The principal issue before this Court, despite the contentions of Bebchick (and now the class), is whether the Court of Appeals erred by addressing the merits of the trial court's original denial of class certification in the first instance, rather than confining itself to the question of whether the class settlement is "fair, adequate, and reasonable."[1]

"The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 623 (9th Cir. 1982). CR 23 is designed to guard against many of the potential failings of the class action device, and consequently protect the interests of all parties, in part, by mandating that class action settlements be court approved. CR 23(e) provides that:

A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal

---

[1] Before the Court of Appeals the Class advocated affirmance of the trial court's approval of the settlement, reasoning that Bebchick's arguments show his "fundamental misunderstanding of both (1) the trial court's role in evaluating a proposed class action settlement; and (2) this Court's role in reviewing the trial court's approval of the settlement." Br. of Resp't at 7.

or compromise shall be given to all members of the class in such manner as the court directs.

CR 23 is identical to its federal counterpart, Fed. R. Civ. P. 23, and thus, federal cases interpreting the analogous federal provision are highly persuasive. *Brown v. Brown*, 6 Wn. App. 249, 252, 492 P.2d 581 (1971). "The primary concern of this subsection is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice*, 688 F.2d at 624 (citing *Collins v. Thompson*, 679 F.2d 168, 172 (9th Cir. 1982)); *see also Simer v. Rios*, 661 F.2d 655, 664 (7th Cir. 1981); *Mendoza v. United States*, 623 F.2d 1338, 1344 (9th Cir. 1980); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970); *see generally* 7A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1797, at 226 (1972)). The requirements of CR 23(e) are for the most part procedural, requiring notice of a proposed settlement be given to class members and that they be given an opportunity to object to the settlement. In this case, class members were also given the opportunity to "opt out."

Although CR 23 is silent in guiding trial courts in their review of class settlements, it is universally stated that a proposed class settlement may be approved by the trial court if it is determined to be "fair, adequate, and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). The criteria generally utilized to make this determination include: the likelihood of success by plaintiffs; the amount of discovery or evidence; the settlement terms and conditions; recommendation and experience of counsel; future expense and likely duration of litigation; recommendation of neutral parties, if any; number of objectors and nature of objections; and the presence of good faith and the absence of

collusion. 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.43 "General Criteria for Settlement Approval" (3d ed. 1992).

The above list is not exhaustive, nor will each factor be relevant in every case. *Officers for Justice*, 688 F.2d at 625. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id.* This is a delicate, albeit largely unintrusive, inquiry by the trial court.

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.* It is not the trial court's duty, nor place, to make sure that every party is content with the settlement. Indeed, this would contravene the very nature of consensual settlements. Rather, the trial court should look to the possibility of inequitable treatment between class members.

> It may be unavoidable that some class members will always be happier with a given result than others, but potential injustice arises as the distribution of benefits and burdens in a class remedy becomes increasingly unequal. Although maximizing the overall gain is a valid pursuit in resolving a class action, a small minority of the class members may not be asked to bear an unduly disproportional share of the accompanying burdens.

*Mendoza*, 623 F.2d at 1344.

A reviewing court's role is even more limited than that of the trial court.

> "Great weight is accorded his [the trial judge's] views because he is exposed to the litigants, and their strategies, positions and proofs. He is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly."

> In fact, so much respect is accorded the opinion of the trial court in these matters that this Court will intervene in a judicially approved settlement of a class action only when the objectors to that settlement have made a clear showing that the [trial court] has abused its discretion.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454-55 (2d Cir. 1974) (first alteration in original) (citation omitted) (quoting *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971)). More importantly,

> *[n]either the trial court nor [an appellate] court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute*, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. . . .
>
> . . . Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.

*Officers for Justice*, 688 F.2d at 625 (emphasis added); *accord Kaye v. Fast Food Operators, Inc.*, 99 F.R.D. 161 (S.D.N.Y. 1983); *Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976); *Grunin*, 513 F.2d 114; *Grinnell*, 495 F.2d 448; *Boggess v. Hogan*, 410 F. Supp. 433 (N.D. Ill. 1975); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974); *Wellman v. Dickinson*, 497 F. Supp. 824 (S.D.N.Y. 1980).

This is not to say that a reviewing court should not look to the merits of the Plaintiffs' case, but that review should be limited to assessing rough probabilities of success as they existed at the time of the settlement. As Holland correctly notes, any other approach would directly stifle litigants' willingness to settle class action claims, a result contrary to the policy favoring settlements. Were the rule otherwise,

> "[p]arties would be hesitant to explore the likelihood of settlement apprehensive as they would then be that the application for approval would necessarily result in a judicial determina-

tion that there was no escape from liability or no hope of recovery and thus no basis for a compromise."

*West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971) (quoting *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (1960)).

The facts of this case are illustrative. Holland and the Plaintiffs settled. Notice of the proposed settlement was given to over 750,000 class members, who had an opportunity to object to the trial court that the settlement was not "fair, adequate, and reasonable." In this case, Bebchick did so, but the trial court approved the settlement despite Bebchick's objection. Bebchick appealed, and the Court of Appeals decided the merits of the trial court's orders preceding the settlement approval, and used its holdings as a basis for determining that the settlement was not "fair, adequate, and reasonable."

This begs the question: If this were procedurally proper, why would a party in Holland's position ever settle a case? Holland settled to avoid litigation, not to be subsumed by it. Under the Court of Appeals' approach Holland bore all the risk. If the Court of Appeals had affirmed the trial court's rulings, and thus held that the settlement was fair, adequate, and reasonable to the class, Holland would be bound by the settlement despite the fact that such a ruling would have meant Holland might have been able to avoid all liability had it litigated the case. However, if the trial court's orders were reversed, as they were in this case, and thus the settlement were disapproved, Holland would be back to litigating the case. In essence, it was a no-lose proposition for the class under the Court of Appeals' approach. Either they received a settlement or they went back to trial in a highly advantageous position. This type of result is not dictated by either the letter or spirit of CR 23. Accordingly, we hold that the Court of Appeals erred by deciding the merits of the trial court's denial of class certification in the first instance.

The remaining question then, is whether the class settlement was "fair, adequate, and reasonable." In reviewing

whether the class settlement was "fair, adequate, and reasonable" we apply an abuse of discretion standard to the trial court's finding. *Moore v. Nat'l Ass'n of Sec. Dealers*, 762 F.2d 1093, 1106 (D.C. Cir. 1985). As noted above, courts generally refer to eight criteria, with differing degrees of emphasis, in making a settlement approval determination: the likelihood of success by plaintiffs; the amount of discovery or evidence; the settlement terms and conditions; recommendation and experience of counsel; future expense and likely duration of litigation; recommendation of neutral parties, if any; number of objectors and nature of objections; and the presence of good faith and the absence of collusion. 2 NEWBERG & CONTE, NEWBERG ON CLASS ACTIONS § 11.43. Those criteria relevant to this suit are evaluated below, each of which, in our opinion, weighs heavily in favor of approval of the settlement as "fair, adequate, and reasonable."

a. Likelihood of Success by Plaintiffs

The likelihood of success by Plaintiffs must be evaluated as it existed at the time of settlement. *See E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 890 (7th Cir. 1985) (noting that there was "great uncertainty about the proper resolution of a number of legal issues involved, any one of which, if resolved in favor of Walker, would result in no recovery"); *Grinnel*, 495 F.2d at 457 (recognizing that there "would have been a serious question as to whether these actions could have been maintained as class actions at all"). At the time of settlement, Plaintiffs were in a situation of great uncertainty regarding the instant suit and, as Holland correctly notes, this weighs heavily in favor of a finding that the settlement was fair, adequate, and reasonable. Holland had a pending summary judgment motion regarding its contractual limitations period, which it had renewed after discovery revealed some of the named Plaintiffs may have discovered the facts underlying their cause of action long before filing suit. Additionally, Plaintiffs' motion for class certification had been denied by the trial court, and the Court of Appeals had denied interlocutory discretionary review of this order based on a determi-

nation that the trial court had not committed "obvious or probable error."

A central issue in this case, from its beginning, has been class certification. It is true that this Court has neither the " 'right [n]or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.' " *Kaye*, 99 F.R.D. at 163 (quoting *Grinnell*, 495 F.2d at 456). However, it is equally true that an assessment of the legal obstacles faced by Plaintiffs in this case, as to the question of class certification, bears directly on the level of risk Plaintiffs faced in receiving no recovery at all.

Holland correctly observes that at the time of settlement Plaintiffs faced an uphill battle in attempting to secure class certification due the trial court's original denial. As the Eleventh Circuit has noted, appellate reversal of a trial court's denial of class certification is a rarity:

> [trial] courts have broad discretion with respect to such rulings, and denials of class certification usually stand. . . . Thus, reliance on the possibility of a reversal of the court's certification decision is ordinarily not reasonable.

*Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1381 (11th Cir. 1998).

Even under the substantive criteria for class certification, it is apparent that Plaintiffs faced significant obstacles. CR 23(b)(3), the provision relating to class certification, requires, in part, a trial court finding that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." CR 23(b)(3). The trial court found certification improper in this case, raising three principal concerns, each of which would be an independent ground to deny certification. First, the court found that there are a significant number of individualized inquiries that would have to be made with respect to Holland's contractual limitations period. Second, the court found that individual issues of

proof related to causation and injury by each class member would cause individual issues to predominate over the common issues of fact and law. And third, the need to address choice of law questions for individual class members would make class certification inefficient. Each of these determinations was overturned by the Court of Appeals.

The most significant challenge to class certification faced by the class was the question of whether some, if not most, of the class members' claims would be time barred by reason of Holland's contractual limitations period. Holland's cruise contract states:

> [Y]ou may not maintain a lawsuit against Owner, HALW or the Ship, nor will Owner, HALW or the Ship be liable therefore, unless HALW is provided with written notice of claim within thirty (30) days after conclusion of the Cruise [and] . . . the lawsuit for such claim is commenced not later than one-hundred eighty (180) days after conclusion of the Cruise.

CP at 409.

Indeed, at the time of settlement Holland had a pending summary judgment motion regarding this issue. The Court of Appeals determined, and Bebchick argues, that the United States Supreme Court's class action tolling principles, established in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 551, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), allow the claims of all class members to proceed, so long as one class member filed within the contractual limitations period (or statute of limitations). According to the Court of Appeals, since named Plaintiff Pickett strictly complied with Holland's contractual limitations period by filing suit within 180 days of the conclusion of her cruise (which ended on January 20, 1996), the claims of all class members were revived.

This argument is based on a fundamental misunderstanding of *American Pipe*. In *American Pipe* the Supreme Court stated:

> A . . . class action is no longer "an invitation to joinder" but a truly representative suit designed to avoid, rather than encour-

age, unnecessary filing of repetitious papers and motions. Under the circumstances of this case, where the District Court found that the named plaintiffs asserted claims that were "typical of the claims or defenses of the class" and would "fairly and adequately protect the interests of the class," . . . the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue. . . . To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties . . . .

*Id.* at 550-51.

As later cases have clarified, "[t]he *American Pipe* rule does not operate to revive stale claims, but rather tolls the limitations period on viable claims while the trial court determines the parameters of the class in any possible class action." *Anderson v. Unisys Corp.*, 47 F.3d 302, 308 (8th Cir. 1995). Thus, the filing of a class action lawsuit, as one that is representative in nature, preserves the claims of only those persons whose claims were not time barred at the time the class suit was filed. Since the class in the instant suit encompassed all passengers that had traveled on a Holland cruise in the four years preceding the filing of suit, many of the class members' claims would be time barred even under *American Pipe* if Holland's contractual limitations provision is given effect.

Alternatively, the Court of Appeals held that Washington's discovery rule applied to Plaintiffs' CPA claims, and as such, Plaintiffs' "cause of action [is] . . . not . . . deemed to have accrued until the discovery by the aggrieved party of the facts constituting the [CPA violation]." *Pickett*, 101 Wn. App. at 913. *See* RCW 4.16.080(4); *see also Reeves v. Teuscher*, 881 F.2d 1495, 1501 (9th Cir. 1989). However, even if this were the case, and Holland's contractual limitations period were valid, there would still be questions of what individual Plaintiffs had knowledge of and when they

gained such knowledge. This would arguably make class certification impractical. Since the proposed class encompassed all persons completing cruises in the four years preceding the lawsuit (which is the statute of limitations under the CPA), and Holland's contractual limitation period was 180 days, there would still be members of the proposed class whose claims could have lapsed even with application of the discovery rule. This was a significant risk for Plaintiffs at the time of settlement.

The trial court's denial of class certification was also based on its determination that individual questions of causation would make class litigation of Plaintiffs' CPA claims impractical. An actionable private claim under Washington's CPA requires "[a] causal link . . . between the unfair or deceptive acts and the injury suffered by plaintiff." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 793, 719 P.2d 531 (1986). In *Hangman Ridge*, we did not elaborate on the level of proof required to show causation. The issue under the facts of this case is whether individual reliance and knowledge is required to prove causation. If it is, class certification is most likely impractical because a showing that each class member specifically relied on Holland's alleged misrepresentations would be required.

Holland cites *Nuttall v. Dowell*, 31 Wn. App. 98, 639 P.2d 832 (1982), a pre-*Hangman* Court of Appeals decision, which stands for the proposition that actual reliance is required in a money damages CPA claim based on misrepresentation. In *Nuttall*, the court held that "a party has not established a causal relationship with a misrepresentation of fact where he does not convince the trier of fact that he relied upon it." *Id.* at 111. This is the only Washington authority directly on point (i.e., dealing with a money damages claim based on misrepresentation). Both parties cite to out of state cases supporting their respective positions. *See, e.g., Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. Dist. Ct. App. 2000) (holding that under Florida CPA reliance and damages are shown by the fact that

person parted with money); *Zekman v. Direct Am. Marketers, Inc.*, 286 Ill. App. 3d 462, 675 N.E.2d 994 (1997) (finding that a party must have relied on the wrong to some extent); *Weinberg v. Sun Co.*, 1999 PA Super. 228, 740 A.2d 1152 (requiring showing that false representation made a difference in a purchasing decision).

Citing a Court of Appeals decision, *Edmonds v. John L. Scott Real Estate, Inc.*, 87 Wn. App. 834, 942 P.2d 1072 (1997), the Court of Appeals in this case held that "[i]njury and causation are established if the plaintiff loses money because of unlawful conduct." *Pickett*, 101 Wn. App. at 916. Both *Edmonds* and the Court of Appeals in the instant suit cited our decision in *Mason v. Mortgage America, Inc.*, 114 Wn.2d 842, 792 P.2d 142 (1990), as the basis for this principle. This is debatable. Neither *Edmonds* nor *Mason* stands directly for the proposition for which it is cited. In *Edmonds*, the plaintiff relied on representations made by the defendant in buying a house. The contract did not alert the plaintiff that the defendant would summarily decide any controversy over earnest money. The defendant's unilateral determination that plaintiff defaulted was deemed an unfair act. Since the plaintiff relied on the representation of defendant in signing the agreement, and lost money, injury and causation were established. In *Mason*, which involved representations made in the purchase of a mobile home, the issue of causation never even arose, and this court's discussion was limited to injury.

Under the posture of this case, we believe it is enough to say that this is a debatable question without a clear answer under Washington law at the time of the parties' settlement, and presented a risk to the Plaintiffs class favoring settlement. Moreover, the Court of Appeals, in its original denial of interlocutory discretionary review engaged in a written analysis similar to that outlined above in determining that the trial court had not committed "obvious or probable error" in denying class certification. CP at 1241. The Court of Appeals' written denial was properly considered by the parties in deciding that settlement was war-

ranted, as it foreshadowed the high level of risk attending any subsequent litigation and, most importantly, was relevant to the trial court's determination that the settlement was reasonable.

The final basis for the trial court's denial of class certification was its determination that individual choice of law questions would predominate. The Court of Appeals held that there was no choice of law problem because the sole claim was under Washington's CPA and individual members of the class could "opt out." *Pickett*, 101 Wn. App. at 912. However, as Holland argues, the United States Constitution puts limits on the application of state law to national class action lawsuits. In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985), the Supreme Court held that a state must have " 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [a state's] law is not arbitrary or unfair." *Id.* at 821-22 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981)). The Court gave "little credence" to the proposition that plaintiffs "by failing to opt out, evinced their desire to be bound by [a state's] law." *Id.* at 820. However, even under *Phillips Petroleum*'s choice of law requirements an "important element" of determining fairness is "the expectation of the parties." *Id.* at 822.

Bebchick argues that this issue was resolved by reason of Holland's choice of law provision in its cruise contract. Holland's cruise contract states:

> [As to Cruises and as to the Ship segment of your Cruisetour, it] will be construed in accordance with the general maritime law of the United States. [As to the non-Ship segment of your Cruisetour, it will be construed in accordance with the laws of the State of Washington, U.S.A.] All disputes and matters whatsoever arising under, in connection with or incident to this contract shall be litigated . . . in the courts of the State of Washington, U.S.A. . . . .

CP at 797.

Unlike the Court of Appeals, we merely recognize that all of the above issues injected a high degree of uncertainty into this case for Plaintiffs. The parties' decision to avoid the costly and protracted litigation that would inevitably follow, and the very real prospect that Plaintiffs might receive little or no recovery if the trial court were affirmed on any ground, are all factors weighing in favor of settlement approval.

b. Amount and Nature of Discovery and Evidence

At the time of settlement the parties had engaged in two years of extensive discovery.

c. Settlement Terms and Conditions

Under the settlement, members of the class receive fully transferable travel vouchers, redeemable for future Holland cruises, valid for three years from the date of issuance. The voucher amounts vary, depending upon the length of the original cruise and the date of its departure, and range from $10.00 to $50.00. The principal restriction on use of the vouchers is that they must be used for a booking made within 45 days of departure.

The face value of the settlement is over $20 million. However, even were the amount far smaller, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. The second circuit has gone so far as to conclude that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at n.2.

Bebchick's only tangible argument against the validity of the settlement is that the vouchers are not sufficiently beneficial to the class because they are unlikely to be used by large numbers of class members. This may or may not be the case. There was evidence that Holland's cruise customers tend to be quite loyal, and that 30-40 percent of each

cruise vessel is occupied by prior customers. However, this issue is further mitigated by the fact that the travel vouchers are fully transferable, even though they have no cash value. As Plaintiffs note in their Court of Appeals briefing,

> [f]or those Class members who choose not to cruise again, the Vouchers can be transferred or sold: (a) to travel agents who do a large volume of business with Holland America who will be most likely to give their repeat cruise customers close to full value for their Vouchers as a mechanism for creating goodwill and increasing business; (b) to cruise consolidators, agents who specialize in buying up berths in bulk to sell at steep discounts at the last minute; (c) through Internet marketing mechanisms; or (d) to a formal market maker . . . .

Br. of Resp't at 11.

### d. Recommendation and Experience of Counsel

When experienced and skilled class counsel support a settlement, their views are given great weight. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). There has been no suggestion by any party that the class received anything other than excellent representation. Indeed, as Holland notes, the trial court went out of its way to point out this fact:

> I guess Holland America ends up paying for both sides but they got their money's worth because . . . [t]his case has been litigated very professionally from beginning to end. I continued to get a great deal of pleasure in the briefs that are submitted. They are letter perfect.

Report of Proceedings (No. 96-2-10831-6 KNT Sept. 28, 1998) at 116.

### e. Reaction of Class

The reaction of the class members to a proposed settlement is one factor in assessing whether or not a settlement is fair, adequate, and reasonable. *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) (approving settlement where only 5 members of a class of 253 objected); *Bryan*, 494 F.2d at 803 ("While the proportion of the class opposed

to a settlement is one factor to be considered in assessing its fairness, . . . a settlement is not unfair or unreasonable simly because a large number of class members oppose it.").

As Holland correctly asserts, in this case the trial court received fewer than 50 objections to the proposed settlement out of 470,000 class notices sent to more than 750,000 potential class members. This de minimis level of objection is far smaller than that approved by federal courts in similar instances. *See Lelsz v. Kavanagh*, 783 F. Supp. 286, 289 (N.D. Tex. 1991) (approving settlement for class of 5,683 where 370 objected); *Parker v. Anderson*, 667 F.2d 1204, 1207 (5th Cir. 1982) (affirming approval of settlement where 1 class member out of 11 objected); *Grinnell*, 495 F.2d at 462 ("Any claim by appellants that the settlement offer is grossly and unreasonably inadequate is belied by the fact that, from all appearances, the vast preponderance of the class members willingly approved the offer. Only twenty objectors appeared from the group of 14,156 claimants.").

f. The Presence of Good Faith and the Absence of Collusion

There has been no allegation of bad faith in this case.

Based on the foregoing considerations we reverse the Court of Appeals and approve the settlement as "fair, adequate, and reasonable."

## CONCLUSION

We hold that the Court of Appeals erred by deciding the merits of the trial court's denial of class certification in the first instance, rather than confining itself to the question of whether the class settlement was "fair, adequate, and reasonable." We reverse the Court of Appeals and hold that the class settlement is fair, adequate, and reasonable.

ALEXANDER, C.J., and SMITH, JOHNSON, IRELAND, BRIDGE, and OWENS, JJ., concur.

SANDERS, J. (dissenting) — The overarching issue is whether the trial court abused its discretion by approving a

class action settlement in light of its earlier decision to deny certification of the same class for litigation purposes. The court's approval of the settlement as fair, adequate, and reasonable is premised on a discounted settlement value due to denial of class certification. This, however, is legally erroneous since class certification for settlement purposes must satisfy a stricter standard than class certification for the purpose of litigation.

There can be little doubt the trial court approved this meager settlement because of its prior decision denying class certification for trial:

> [C]ertainly the legal posture that this case is in I think is instructive on what is or is not a fair and a reasonable and adequate settlement, and you know once the Court denied certification it makes it very difficult to litigate whatever individual interests that each of the individuals may have.
>
> . . . .
>
> So I think that from the standpoint of where the case is that it is a remarkable settlement . . . .

Verbatim Report of Proceedings (Sept. 28, 1998) at 107-08. However, in its final court order approving the settlement the trial court found class certification for settlement purposes to be appropriate:

> This Court on September 22, 1997 found that class certification for trial purposes was inappropriate with respect to causation and damages. However, in the context of deciding whether the Settlement is fair, adequate and reasonable, common questions of law and fact exist and predominate over questions affecting only individual Class members. Therefore, the Class is sufficiently cohesive to warrant adjudication through settlement by representation; . . . .

Clerk's Papers (CP) at 289.

The record demonstrates the trial court's denial of certification for trial was the moving force that motivated the named plaintiffs to enter into settlement negotiations with Holland.

In light of the denial of plaintiffs' request for discretionary review of the trial court's class certification denial, it appeared that few cruise passengers could establish a [Consumer Protection Act, chapter 19.86 RCW] claim against [Holland] for its deceptive conduct. Thus, plaintiffs had good reasons under the circumstances for entering into the settlement with [Holland]. *Although plaintiffs supported the fairness and adequacy of the settlement at the appellate court, they did so only because the trial court's class certification ruling, coupled with the denial of discretionary review, left them no other real choice.*

Suppl. Br. of Pls./Resp'ts at 18 n.17 (emphasis added).

In other words, denial of certification for litigation purposes coupled with the Court of Appeals' refusal to review that denial sounded the death knell to the class members' ability to prosecute their claims against Holland in a practical and economic manner. The fact that the named plaintiffs now come before this court *opposing* the very settlement they previously negotiated, and defended below, further evinces their decision to settle was based on the denial of class certification for trial.

Class member Leonard Bebchick here objects to the proposed settlement, and reasonably so. The settlement would offer discount coupons having virtually no practical value to class members. Although Holland claimed the 1.5 million coupons offered had an aggregate face value of $20 million, the conditions placed on redeeming these coupons, coupled with the nature of Holland's price schedule, ensured only a miniscule portion of these coupons would ever be used, and even then only if a class member paid Holland thousands of dollars for future trips. The coupons ranged in value from $10 to $50 and were subject to a so-called "capacity control" restriction, meaning they could be used only on travels booked less than 45 days from departure. However Holland frequently sells its cruises on an early-purchase, reduced-fare basis. Savings under this early-purchase scheme range as high as 20-25 percent of the ticket price, which sometimes goes as high as $5,000. Naturally, reasonable travelers will not forgo such large

savings to receive a coupon credit of only $10 because early-purchase discounts would more than offset whatever illusory benefit might be achieved from the settlement.

Such a settlement makes sense only if there is no alternative. That was the case here because the trial court's denial of class certification for trial, and denial of discretionary appellate review, defeated the only viable alternative available to the class.

Other courts have recognized denial of certification for trial may render the representative plaintiff's individual claim insufficient to warrant the expense of continued litigation. *See, e.g., Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000). This realization led to the recent amendment of Fed. R. Civ. P. 23(f) to provide a mechanism whereby appellate courts "can restore equilibrium when a doubtful class certification ruling would virtually compel a party to abandon a potentially meritorious claim or defense before trial." *Waste Mgmt. Holdings*, 208 F.3d at 293.

Only by relying on its own erroneous prior decision denying class certification for litigation purposes could the trial court justify approving a settlement which provided little practical benefit to class members. Consequently, if the trial court's original denial of certification for trial was improper, the foundation for its approval of the settlement was similarly flawed, as is our majority's decision to affirm it. The Court of Appeals recognized this, as do I.

Although the majority correctly states "CR 23 is identical to its federal counterpart, Fed. R. Civ. P. 23, and thus, federal cases interpreting the analogous federal provision are highly persuasive," majority at 188, my colleagues miss the seminal case on class settlements: *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). There the Court delineated the three-step approach Fed. R. Civ. P. 23 mandates to certify a class for settlement purposes. CR 23 is identical to Fed. R. Civ. P. 23, and I agree there is no reason a different approach should

be taken here. *See Am. Disc. Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 37, 499 P.2d 869 (1972); *Brown v. Brown*, 6 Wn. App. 249, 252, 492 P.2d 581 (1971).

*Amchem* involved a massive class action for asbestos-related injuries during the heyday of asbestos litigation. *Amchem*, 521 U.S. at 597. The proposed class covered several hundred thousand persons exposed to asbestos. *Id.* The Supreme Court's reasoning, analysis, and holdings on class settlements under Rule 23 are instructive. The parties in *Amchem* proposed a settlement that, much like the settlement at bar, not only settled the claims of the named plaintiffs, but also necessarily precluded every class member who had not opted out from individually pursuing their claims following settlement approval. *Id.* at 597, 603. Like here, the district court only certified the class for "settlement purposes" under Rule 23(b)(3), and then approved the proposed settlement as fair and adequate. *Amchem*, 521 U.S. at 597, 605.

However the Court of Appeals for the Third Circuit reversed because the class could not satisfy the certification requirements of Rule 23(a) and (b). *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 634 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591. In addition to decertifying the class, the Court of Appeals also vacated the injunction prohibiting class members from individually pursuing claims. *Georgine*, 83 F.3d at 635. The court held even though the class action settled, the same certification requirements of Rule 23(a) and (b) must be satisfied as would be the case if it were going to trial. *Georgine*, 83 F.3d at 625.

With slight modification, the Supreme Court affirmed the Court of Appeals decision and adopted much of its reasoning. *Amchem*, 521 U.S. at 619-20. The Court held, as had the Court of Appeals, the certification requirements of Rule 23(a) and (b) must be satisfied *before* a court asked to approve a class settlement can determine the fairness thereof under Rule 23(e). *See Amchem*, 521 U.S. at 613-22.

Under *Amchem*, approval of a proposed class settlement requires a three-step approach. All class actions, whether

settled or litigated, must first meet the prerequisites in CR 23(a) of numerosity, commonality, typicality, and adequacy of representation. *See Amchem*, 521 U.S. at 613. Second, if all four requirements of CR 23(a) have been met, proponents of a class settlement "must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Third, if, *and only if*, the certification requirements of both Rule 23(a) and (b) have been satisfied may a court analyze a proposed class settlement for fairness, adequacy, and reasonableness under CR 23(e). *See Amchem*, 521 U.S. at 620-22; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

It is important to note the requirements in CR 23(a) and (b) are not for the benefit of the named plaintiffs or the defendants, but for the protection of the absent class members. Although absent class members will never see the inside of the courtroom, or in this case sit at the negotiating table, their legal rights are determined by the outcome.

Neither the trial court, the Court of Appeals, nor today's majority follows the three-step analysis required by CR 23. The majority's opinion is focused entirely on CR 23(e), and does not even consider whether the absent class members received the protection they were due under CR 23(a) and (b). Further, the majority's fairness determination under CR 23(e) is premised on the same erroneous trial court decision to deny class certification for litigation purposes as was the trial court's approval of the settlement.

Quixotically, although the trial court initially declined to certify the proposed class for litigation purposes under CR 23(b)(3), finding individual questions of law and fact to predominate over common questions, it later decided to certify the class *for settlement purposes*, finding:

(a)  The Class is so numerous that joinder of all members is impracticable;

(b)  There are certain questions of law or fact common to the above-described Class;

(c) For purposes of settlement, the claims of plaintiffs are typical of the claims of the above-described Class;

(d) The plaintiffs . . . will fairly and adequately protect the interests of the above-described Class in connection with the Settlement;

(e) This Court on September 22, 1997 found that class certification for trial purposes was inappropriate with respect to causation and damages. However, in the context of deciding whether the Settlement is fair, adequate and reasonable, common questions of law and fact exist and predominate over questions affecting only individual Class members. Therefore, the Class is sufficiently cohesive to warrant adjudication through settlement by representation; and

(f) For purposes of Settlement, certification of the above-described Plaintiff Settlement Class is superior to other available methods for the fair and efficient settlement of the claims of the Class. For purposes of Settlement, certification of the above-described Plaintiff Settlement Class is superior to other available methods for the fair and efficient settlement of the claims of the Class.

CP at 289-90. *Cf.* CP at 66; majority at 185. Findings (a) through (d) satisfy the prerequisite numerosity, commonality, typicality, and adequacy of representation requirements of CR 23(a). Findings (e) and (f) satisfy the predominance and superiority findings required by CR 23(b)(3).

This settlement approval is fatally wounded because the trial court found the settlement reasonable *because of* its prior decision to deny the same class certification for litigation purposes. However, the procedural protections in CR 23

demand undiluted, *even heightened*, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Amchem*, 521 U.S. at 620 (emphasis added); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846, 119 S. Ct. 2295, 144 L.

Ed. 2d 715 (1999). In the settlement context, as well as in a litigation setting, it is of utmost importance that CR 23(a) and (b) be applied to protect the interests of absent class members. *Amchem*, 521 U.S. at 620. We must recognize CR 23(e) operates *in addition to*, not instead of, the certification requirements of CR 23(a) and (b).

> Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed.
>
> The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments—checks shorn of utility—in the settlement-class context. First, the standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind—class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness.
>
> Second, if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed. Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer . . . .

*Amchem*, 521 U.S. at 621. In other words, a fairness hearing under CR 23(e) "is no substitute for rigorous adherence to those provisions of the Rule 'designed to protect absentees.'" *Ortiz*, 527 U.S. at 849 (quoting *Amchem*, 521 U.S. at 620).

We must also recognize certification of a class for settlement purposes in an action for money damages implicates the Seventh Amendment rights of the absent class members to a trial by jury. *Ortiz*, 527 U.S. at 846. Class actions are representative suits that, when settled, impose a preclusive agreement by the named plaintiffs on themselves as well as absent class members. This necessarily precludes

absent class members who possess valid legal claims from independently exercising their right to their day in court. *Id.*

Juxtaposing the trial court's findings to support denial of class certification for trial with those made when it approved the settlement, the contradiction makes evident that the trial court misapplied CR 23. Whether a class action is headed for trial or for settlement, CR 23 imposes the same requirements. And here, the class proposed for trial was the same as the class proposed for settlement. *Compare* CP at 32 (setting out the proposed class for trial) *with* CP at 289 (setting out the approved class for settlement purposes). If the rule is the same and the class is the same, the two decisions by the trial court on the certification issue must be the same. But here they were not; they were 180 degrees apart. This is plain and palpable error.

As a result of the divergent findings the trial court improperly devalued the merits of the case by factoring in its erroneous decision to deny certification for trial. The trial court's decision to certify the class for settlement demonstrates its decision to deny certification for trial was error. Thus, to discount the value of the plaintiffs' case on this ground was untenable. The trial court abused its discretion. I would set aside the settlement and remand for further appropriate proceedings.

CHAMBERS, J., concurs with SANDERS, J.

Reconsideration denied February 20, 2002.