**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| ANTHONY DEIEN, on behalf of himself and all others similarly situated, | DIVISION ONE |
| Respondent, | No. 84056-8-I |
| v. | PUBLISHED OPINION |
| SEATTLE CITY LIGHT, | |
| Respondent, | |
| MATTHEW PAMPENA, | |
| Appellant/Objector. | |

DWYER, J. — When the trial court determines that a class action settlement agreement is fair, adequate, and reasonable, we intervene in the judicially approved settlement only on a clear showing that the court abused its considerable discretion in so ruling. Moreover, we will not conclude that the trial court abused discretion that it had no opportunity to exercise due to an objector's failure to raise a particular objection to the settlement before that court. Indeed, the general rule that an argument must be presented to the trial court in order to be preserved for appeal is particularly salient in the context of a class action settlement, where due process concerns mandate that putative class members are informed regarding proposed objections.

Here, Matthew Pampena issued the sole objection to a class action settlement agreement between Seattle City Light and Anthony Deien, a former

customer of the public utility. At the final approval hearing, the trial court overruled Pampena's objection and approved the settlement agreement. Pampena appealed. In resolving the issues presented, we first decline to review an objection to the settlement that Pampena failed to raise in the trial court. We next conclude that the sole objection that is preserved on appeal does not undermine the sufficiency of the trial court's reasons for approving the settlement. Thus, we hold that the trial court did not abuse its discretion in ruling that the settlement agreement is fair, adequate, and reasonable. Accordingly, we affirm the trial court's approval of the class settlement.

I

On August 21, 2019, Anthony Deien, a former Seattle City Light (SCL) customer, filed a class action complaint against the public utility in the King County Superior Court. The complaint alleged that SCL inaccurately estimated electricity meter readings following its attempt to transition to digital meter readers, resulting in estimated bills to customers that were "often wildly inaccurate" and subsequent "true up" bills "that [were] five, ten, or even thirty times the amounts of [customers'] prior bills." As a result, the complaint alleged, SCL "often charge[d] customers for electricity they did not use and charge[d] higher rates than the rates authorized by the municipal code." Premised on these allegations, the complaint asserted claims for breach of contract and the duty of good faith and fair dealing, violation of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW, and violation of chapter 80.04 RCW and WAC 480-100.

2

During discovery, Deien obtained nearly 70,000 pages of documents and millions of billing data records. Both Deien and SCL engaged experts to conduct analyses of the voluminous billing records. The parties thereafter engaged in mediation in November 2020 and February 2021. After more than six months of additional negotiations, Deien and SCL finalized and executed a settlement agreement resolving the asserted claims. Throughout the parties' negotiations, a motion to dismiss the case, having been filed by SCL, was pending in the trial court.

On September 29, 2021, Deien filed a motion for preliminary approval of the settlement agreement. The trial court granted preliminary approval and set forth a deadline by which putative class members were required to file any objections to the settlement. On February 28, 2022, Matthew Pampena filed the sole objection to the settlement agreement. While the agreement included both significant monetary relief and multiple forms of injunctive relief, Pampena objected on the basis of a single injunctive relief provision in the agreement. Specifically, he asserted that the agreement's application of an "estimated [electricity] usage table," required to be used by SCL in performing billing recalculations, would not provide meaningful relief to putative class members.

On April 15, 2022, following a final approval hearing, the trial court overruled Pampena's objection and granted final approval of the settlement agreement. The court conditionally certified the class for settlement purposes and determined that notice to the settlement class members was sufficient. With regard to Pampena's objection, the court explained: "The Court can only approve

3

No. 84056-8-I/4

or deny the Settlement agreed to by the parties, not modify it. The Court does not agree that the injunctive relief provisions as written will make it too difficult for consumers to have bills recalculated in appropriate cases."

The trial court further found:

> 11. The Settlement is the result of arms' length negotiations conducted in good faith by experienced attorneys familiar with the legal and factual issues of this case.
> 12. The Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class in light of the complexity, expense, and duration of litigation, as well as the risk involved in establishing liability and damages and in obtaining and maintaining the class action through trial and appeal.
> 13. The consideration provided by the Settlement constitutes fair value given in exchange for the release of the Settlement Class Members' Released Claims against the Released Parties. The Court finds that the consideration provided to the Settlement Class Members is reasonable, considering the facts and circumstances of the claims and defenses asserted in the action, and the potential risks and likelihood of success of pursuing class certification and trial on the merits.

Thus, the court granted final approval of the settlement agreement "as fair, reasonable, adequate, just, and in compliance with all applicable requirements of the applicable laws, and in the best interest of the Settlement Class."

Pampena appeals.

## II

On appeal, Pampena asserts for the first time that the settlement agreement is structured to avoid meaningful oversight of SCL's compliance with its provisions and, thus, that the trial court erred in granting final approval of the settlement. We adhere to the longstanding rule that a litigant may not raise an argument on appeal that he refrained from raising in the trial court, particularly

4

No. 84056-8-I/5

when, as here, the rationale for applying that rule is especially salient. Accordingly, we decline to address this assertion of error.

Generally, we will not entertain claims of error on appeal that were not first presented to the trial court. RAP 2.5(a). This rule "reflects a policy of encouraging the efficient use of judicial resources." State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). It does so by discouraging litigants from "remain[ing] silent as to claimed error during trial and later, for the first time, urg[ing] objections thereto on appeal." Bellevue Sch. Dist. No. 405 v. Lee, 70 Wn.2d 947, 950, 425 P.2d 902 (1967). While we retain the discretion to consider an issue not raised in the trial court, we rarely exercise such discretion. Karlberg v. Otten, 167 Wn. App. 522, 531, 280 P.3d 1123 (2012).

In the trial court, Pampena raised only one objection to the approval of the settlement agreement—that a sole injunctive relief provision setting forth the method for performing billing recalculations does not provide sufficient relief to unnamed putative class members. On appeal, however, Pampena additionally requests that we reverse the trial court's approval of the settlement agreement on another basis. Specifically, he asserts that the trial court erred by approving the settlement agreement because, according to Pampena, the agreement fails to provide for meaningful oversight of SCL's compliance with its provisions. In his briefing and at oral argument, Pampena contended that these claims of error are indistinguishable. They are not. Indeed, nowhere in his objection in the trial court did Pampena even reference any such "oversight." Thus, we find

5

No. 84056-8-I/6

unpersuasive his suggestion that this claim of error was, indeed, presented to the trial court.

Accordingly, we must determine whether to entertain the merits of this claim of error on appeal. We decline to do so. Pertinent to our decision is the particular significance in this context of the application of the rule that issues not raised in the trial court are unpreserved on appeal. When an objector asserts a purported defect with a proposed class settlement that was not presented to the trial court, both the court and the parties are prevented from timely addressing any defects with the settlement that are meritorious. Moreover, reviewing unpreserved objections for the first time on appeal deprives class members of their right to be apprised of the nature of any objection to the class settlement.[1]

The trial court's limited role in reviewing class settlements further dictates that objections thereto be first presented to that court. In reviewing a class settlement, the court is not

> empowered to rewrite the settlement agreed upon by the parties. [It] may not delete, modify, or substitute certain provisions of the consent decree. [While the court] may suggest modifications, . . . ultimately, it must consider the proposal as a whole and as submitted. Approval must then be given or withheld. . . . In short, the settlement must stand or fall as a whole.

---

[1] In some cases, federal courts have relaxed the standard for waiver in class actions. They have done so when circumstances prevented an objection from being raised in the trial court or when permitting waiver was otherwise in the best interest of class members. See, e.g., Saucillo v. Peck, 25 F.4th 1118, 1130 (9th Cir. 2022) (holding that "an objector need not be an oracle and predict issues that will arise for the first time in the district court's final order"); In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 430 (3d Cir. 2016) (recognizing that "in many instances class members are far removed from the litigation and lack the information and incentive to object"); In re Sw. Airlines Voucher Litig., 799 F.3d 701, 714 (7th Cir. 2015) (rejecting the waiver argument when the objecting class members were unaware of the conflict of interest in the trial court). Here, Pampena was not precluded from raising this objection in the trial court, and the interests of the putative class members as a whole weigh in favor of waiver.

6

Officers for Just. v. Civ. Serv. Comm'n, 688 F.2d 615, 630 (9th Cir. 1982). However, the court may deny without prejudice the approval of a settlement agreement, explaining the deficiencies that foreclosed such approval and allowing the parties an opportunity to address the settlement's shortcomings. See, e.g., Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1050 (9th Cir. 2019) (identifying "several aspects of the settlement that . . . cast serious doubt on whether the settlement meets the applicable fairness standard"); Haralson v. U.S. Aviation Servs. Corp., 383 F.Supp.3d 959, 967 n.5 (N.D. Cal. 2019) (deferring a ruling on class certification "until the parties have corrected the deficiencies in the Settlement"). Thus, it is in the interests of the class members that any objections to the settlement are timely raised in the trial court, allowing the parties to address any meritorious complaints without risk of delaying settlement due to challenges that are without merit.

In class action cases, the courts have "an independent obligation to protect the interests of the class." In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 430 (3d Cir. 2016); see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995) (recognizing that "the court plays the important role of protector of the absentees' interests, in a sort of fiduciary capacity"). Here, we fulfill that obligation by declining to review for the first time on appeal Pampena's objection to the settlement agreement on the purported basis that it fails to provide for meaningful oversight of SCL's obligations thereunder.

7

No. 84056-8-I/8

III

Pampena additionally contends, as he did in the trial court, that the injunctive relief provision setting forth the method for performing billing recalculations does not provide meaningful relief to the unnamed putative class members.  Thus, he asserts, the trial court erred by approving the settlement agreement.  We disagree.  The trial court properly considered the appropriate factors in exercising its discretion to approve the settlement agreement, and the record is devoid of any indication that the court abused its discretion in so ruling.  Indeed, Pampena's objection, which, in any event, is unsupported by the terms of the agreement, does not specifically attack the sufficiency of the trial court's reasoning.  Accordingly, we affirm the trial court's final approval of the settlement agreement.

A

"'The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks.'"  Pickett v. Holland Am. Line-Westours, Inc., 145 Wn.2d 178, 187, 35 P.3d 351 (2001) (quoting Officers for Just., 688 F.2d at 623).  Civil Rule 23 is designed to guard against such risks, including by requiring that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."  CR 23(e).  "Although CR 23 is silent in guiding trial courts in their review of class settlements, it is universally stated that a proposed class settlement may be

8

approved by the trial court if it is determined to be 'fair, adequate, and reasonable.'" Pickett, 145 Wn.2d at 188 (quoting Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993)).

The trial court's determination involves a balancing of several factors, including

> the likelihood of success by plaintiffs; the amount of discovery or evidence; the settlement terms and conditions; recommendation and experience of counsel; future expense and likely duration of litigation; recommendation of neutral parties, if any; number of objectors and nature of objections; and the presence of good faith and the absence of collusion.

Pickett, 145 Wn.2d at 188-89. This list of factors "is not exhaustive, nor will each factor be relevant in every case." Pickett, 145 Wn.2d at 189. However, the court's "role in evaluating a proposed settlement must be tailored to fulfill [these] objectives." Officers for Just., 688 F.2d at 625.

Due to the consensual nature of settlements, the trial court's inquiry is "delicate" and "largely unintrusive." Pickett, 145 Wn.2d at 189.

> "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

Pickett, 145 Wn.2d at 189 (alteration in original) (quoting Officers for Just., 688 F.2d at 625). "It is not the trial court's duty, nor place, to make sure that every party is content with the settlement." Pickett, 145 Wn.2d at 189. Nor is the proposed settlement "to be judged against a hypothetical or speculative measure

9

of what *might* have been achieved by the negotiators." Officers for Just., 688

F.2d at 625.

Our task on appeal is even more limited than that of the trial court. In our

review of an order granting approval of a class settlement, we accord great

weight to the trial judge's views. Pickett, 145 Wn.2d at 189-90. This is so

because

> "[the trial judge] is exposed to the litigants, and their strategies,
> positions and proofs. He is aware of the expense and possible
> legal bars to success. Simply stated, he is on the firing line and
> can evaluate the action accordingly."
>
> "In fact, so much respect is accorded the opinion of the trial court in
> these matters that [we] will intervene in a judicially approved
> settlement of a class action only when the objectors to that
> settlement have made a clear showing that the [trial court] has
> abused its discretion."

Pickett, 145 Wn.2d at 189-90 (third alteration in original) (internal quotation

marks omitted) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 454-55

(2d Cir. 1974)).

B

Here, in approving the class settlement as "fair, reasonable, adequate,

[and] just," the trial court evaluated the settlement pursuant to the factors set

forth above. For instance, the court considered "the facts and circumstances of

the claims and defenses asserted in the action, and the potential risks and

likelihood of success of pursuing class certification and trial on the merits." The

court indicated that the likelihood of success on plaintiffs' CPA claim "was a valid

concern." Indeed, SCL's motion to dismiss the complaint was pending during the

10

parties' negotiations. Such uncertainties at the time of settlement "weigh[] heavily in favor of a finding that the settlement was fair, adequate, and reasonable." Pickett, 145 Wn.2d at 192.

The trial court additionally found that, given class counsel's skill and experience, counsel's support of the settlement was entitled to great weight. This finding is supported by the record, which demonstrates that class counsel has significant experience litigating class action lawsuits, and that counsel's law firm has tried numerous such actions, obtaining significant relief for class plaintiffs. The trial court properly considered that, "[w]hen experienced and skilled class counsel support a settlement, their views are given great weight." Pickett, 145 Wn.2d at 200.

The trial court additionally considered the future expense and likely duration of litigation, as well as the putative class members' reaction to the settlement, in evaluating whether the settlement is fair, reasonable, and adequate. See Pickett, 145 Wn.2d at 188-89. The court found that approval of the settlement was appropriate "in light of the complexity, expense, and duration of litigation, as well as the risk involved in establishing liability and damages and in obtaining and maintaining the class action through trial and appeal." The court determined that the putative class members were provided "the best notice practicable" and noted that only one such class member, Pampena, had filed an objection to the settlement. Such factors further weigh in favor of settlement approval.

11

No. 84056-8-I/12

Finally, the trial court found that the settlement agreement "is the result of arms' length negotiations conducted in good faith by experienced attorneys familiar with the legal and factual issues of this case." This finding of good faith and the absence of collusion supports the court's approval of the settlement.[2] See Pickett, 145 Wn.2d at 188-89. Relatedly, the record demonstrates that the parties engaged in extensive discovery and obtained expert analysis of voluminous billing records prior to settlement negotiations. Such facts further support the trial court's approval of the settlement. See Pickett, 145 Wn.2d at 199.

C

1

Each of these considerations supports the trial court's determination that the settlement is fair, adequate, and reasonable. Taken together, they weigh heavily against a conclusion that the trial court abused its discretion by approving the settlement. Nevertheless, Pampena asserts that the injunctive relief provision setting forth the method for performing billing recalculations does not provide meaningful relief to the unnamed putative class members. We disagree.

Pampena's objection is unsupported by the terms of the agreement. Moreover, his claim of error does not attack the sufficiency of the trial court's reasoning for approving the settlement. Indeed, Pampena nowhere addresses the propriety of the trial court's assessment of the pertinent considerations.

---

[2] Pampena contends on appeal, without any basis for so asserting, that class counsel breached a fiduciary duty to the putative class members. He points to no evidence of collusion or bad faith, and the record is wholly devoid of any such evidence.

12

Accordingly, we conclude that his assertion—that the trial court abused its discretion by approving the settlement—is wholly without merit.

In addition to providing significant monetary relief, the settlement agreement provides for injunctive relief requiring SCL to improve its customer service and consumer billing procedures in six specific ways. Pampena objects to only one of these injunctive relief provisions. The challenged provision requires SCL to "develop and use an estimated usage table to calculate or recalculate a customer's bill and to then adjust the bill" when an estimated or a subsequent "[t]rue-up" bill results from one of three conditions. Those conditions include (1) an uninstalled meter, (2) a problem or delay by SCL in loading the meter reads, (3) or a determination by SCL, following an investigation, that the bill "is not attributable to Customer Conduct."

The "estimated usage table," pursuant to which billing recalculations are made, includes "three billing levels to which a bill will be adjusted." These billing levels are based on both premise size and the existence of high electricity usage features, "such as a lighted greenhouse or pool." Pursuant to the agreement, "[t]he Normal billing level will apply to the majority of residential customers," whose pertinent bills will be recalculated "at 70% of the average electricity consumption of [an SCL] customer." It additionally provides for billing recalculation "set at 50% of the average electricity consumption" of an SCL customer and "130% of the average electricity consumption" for the "Below Average" and "Above Average" billing levels, respectively.

13

Pampena concedes that, because the "estimated usage table" is set at a level below the average electricity consumption for SCL customers as a whole, the billing recalculations made pursuant to the agreement are likely to provide a significant benefit to consumers. He nevertheless challenges the provision stating that such relief will be available when, following an investigation, SCL concludes that the estimated bill or subsequent "[t]rue-up" bill is "not attributable to Customer Conduct." According to Pampena, the agreement should instead place the burden of establishing the source of billing errors on SCL itself, rather than providing relief when an inaccurate bill is "not attributable" to the actions of the customer.

However, in overruling Pampena's objection, the trial court found that "the injunctive relief provisions as written" will not "make it too difficult for consumers to have bills recalculated in appropriate cases." The record supports this finding. The agreement both defines "Customer Conduct" and, in an exhibit to the agreement, requires SCL to offer use of the "estimated usage table" to recalculate a customer's bill when the increased billing "remains unexplained" following the investigation.[3] Thus, Pampena's suggestion that SCL will be permitted to simply attribute billing inaccuracies to customer conduct is contrary to the language of the agreement itself.

---

[3] Pursuant to the agreement, "Customer Conduct"
means any action by the [SCL] customer or person acting on the customer's behalf that directly or indirectly affects the amount of electricity metered, such as increased actual electricity usage, theft, current diversion, fraud, restricting access to the meter or other equipment on the premises, or customer's failure to timely report a move-in date or start of service.

No. 84056-8-I/15

2

Pampena additionally misunderstands the role of the court in assessing the sufficiency of a class action settlement. The trial court is neither "presented with a choice between alternative remedies" nor "empowered to rewrite the settlement agreed upon by the parties." Officers for Just., 688 F.2d at 630. The court "may not delete, modify, or substitute certain provisions of the consent decree." Officers for Just., 688 F.2d at 630. Rather, "it must consider the proposal as a whole and as submitted." Officers for Just., 688 F.2d at 630. Furthermore, ensuring that "every party is content with the settlement" would be an intrusion by the trial court on the private agreement that would "contravene the very nature of consensual settlements." Pickett, 145 Wn.2d at 189.

This understanding of the trial court's role in evaluating class action settlements, which has eluded Pampena here, must inform our review of the court's settlement approval. Were the trial court to have denied Deien's motion for final settlement approval, the significant monetary and injunctive relief provided in the settlement would have been put at risk.[4] As the trial court recognized, the plaintiffs would have faced significant hurdles were the case to have proceeded to litigation. Moreover, even had the parties agreed to a revised settlement, the putative class members would have incurred significant delay in receiving the relief to which they are entitled pursuant to the agreement.

---

[4] We note that much of the injunctive relief set forth in the agreement would likely not have been available to the plaintiffs were this litigation resolved on the merits. The CPA provides for prospective injunctive relief to enjoin further violations of the act. RCW 19.86.090. Such relief can be obtained only upon serving the attorney general with the pleading alleging a CPA violation. RCW 19.86.095.

15

No. 84056-8-I/16

When evaluating a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Officers for Just., 688 F.2d at 628. Here, the trial court did precisely that. The settlement agreed to by the parties sets forth extensive relief, both prospective and retrospective, for SCL customers. Pampena's objection to a single injunctive relief provision, even if that objection had accurately reflected the agreement, is a far less significant consideration than he suggests. Additionally, Pampena wholly disregards the pertinent considerations of the trial court in evaluating the settlement.

For all of the reasons set forth above, we conclude that the trial court properly exercised its discretion in granting final approval to the proposed settlement agreement.

Affirmed.

Dwyer, J.

WE CONCUR:

Birk, J.          Bowman, J

16